IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 08-cv-00312-BNB-KMT

MICHAEL SALVATORE,

Plaintiff,

v.

IAN MICHAEL PINGEL, as an individual, and
FOUR WINDS, INC./PEOPLE'S CHOICE TRANSPORTATION, INC.,

Defendants.

---

## ORDER ON MOTION FOR SANCTIONS
## AND RELATED MOTIONS

---

This matter arises on the following:

(1)     **Plaintiff's Motion for Sanctions Due to Spoliation of Evidence** [Doc. # 77,

filed 1/30/2009] (the "Motion for Sanctions");

(2)     **Plaintiff's Motion to Consider Supplemental Exhibits** [Doc. # 85, filed

2/18/2009] (the "Motion to Supplement");

(3)     **Plaintiff's Motion for Leave to File a Reply In Support of His Motion for

Sanctions Due to Spoliation of Evidence** [Doc. # 89, filed 2/26/2009] (the "Motion to File

Reply"); and

(4)     **Defendants' Motion for Leave to File Sur-Reply to Plaintiff's Motion for

Sanctions Due to Spoliation of Evidence** [Doc. # 91, filed 3/5/2009] (the "Motion to File Sur-

Reply").

The Motion to Supplement [Doc. # 85], Motion to File Reply [Doc. # 89], and Motion to File Sur-Reply [Doc. # 91] are GRANTED.

The Motion for Sanctions [Doc. # 77] is DENIED.

## I. BACKGROUND FACTS

This is a personal injury case arising from a collision that occurred on May 17, 2005. According to the plaintiff:

> On May 17, 2005, Defendant Pingel, while in the course and scope of his employment with Defendant Four Winds, drove a company van in to the rear of Mr. Salvatore's motorcycle on Colorado 285. Mr. Salvatore was thrown from the motorcycle and rolled while Defendant Pingel struck and dragged the motorcycle 119 feet. Defendant Pingel was unable to stop the company van and carried the motorcycle through and into the intersection. Mr. Pingel was cited by the Sheridan Police Department for "following too closely."

Motion for Sanctions at p.2.

The plaintiff sued Ian Pingel for negligence and negligence per se in connection with his operation of the van. In addition, the plaintiff sued People's Choice Transportation ("People's Choice"), Mr. Pingel's employer and the owner of the van, for respondeat superior; negligent hiring, retention, and supervision of Mr. Pingel; and for negligence and negligence per se for failure to properly maintain the van. In connection with the claims for failure to maintain the van People's Choice, the plaintiff alleges:

> 58. Upon information and belief, Defendant People's Choice Transportation purposefully ordered use of the vehicle after having had notice that the brakes were faulty and in poor working condition.
>
> 59. Upon information and belief, Defendant People's Choice Transportation's behavior was both willful and wanton in ordering use of the vehicle after Defendant People's Choice Transportation

was on notice of the faulty brakes. Such conduct was also heedless and reckless, and conducted without regard to the consequences, safety, or rights of the Plaintiff.

60. Plaintiff seeks exemplary damages under C.R.S. § 13-21-102. Such a claim is permitted based on evidence that People's Choice Transportation had notice that the brakes on the vehicle involved in the collision were faulty, yet wantonly and willfully ordered continued use of the vehicle without regard for the safety of Plaintiff or others.

Second Amended Complaint [Doc. # 45, filed 9/15/2008] at ¶¶58-60.

There is evidence that the van's brakes may have malfunctioned in connection with the accident. In particular, Mr. Pingel testified at his deposition:

Q:      When did you slam on your brakes?

A:      I began--as soon as I saw that [the plaintiff] stopped, then I gave that van every bit of braking that I had.

Q:      Did this van, on that date, have any problems with the brakes?

A:      The day previous--there's a daily vehicle inspection report that drivers have to fill out when they drive a vehicle.

And the day previous, it was--it was written "brakes low," which can be interpreted as several different things.

But on the daily vehicle inspection report, there's two boxes, one that says, "above defects corrected," one that says, "above defects need not be corrected for safe operation."

And there was a box that said, "above defects corrected," and it was checked, and it had my supervisor's signature. So I was to assume, when I started driving the van, that the above defects had been corrected.

                              *    *    *

Q:      Did you suspect that maybe the brakes had not been corrected--

MR. MAGGIO:          Objection; foundation.

3

Q:      --from the day before?

MR. MAGGIO:      I'm sorry.  Foundation.

A:      Not at the time I started driving it.  They felt fine.

Q:      (By Ms. Hoskins)   After the collision, did you suspect that maybe the brakes had not been repaired?

A:      Yes.

MR. MAGGIO:      Foundation.

Q:      (By Ms. Hoskins)   And that was based upon the length of time it took you to stop the van?

A:      Right.

                              *   *   *

Q:      So based on the length of time it took you once you slammed on the brakes for the van to stop, you would agree that it was abnormal?

MR. MAGGIO:      Form and foundation.

A:      It was likely that there was a problem based on that, on the amount of time it took.

Deposition of Ian Pingel [Doc. # 77-9] filed 1/30/2009] ("Pingel Depo.") p.41 line 10 through p.47 line 10.

The plaintiff asserts that defendant People's Choice destroyed five pieces of evidence relating to the van's brakes:

(1)      The Vehicle Inspection Report which People's Choice drivers were required to prepare on a daily basis, Motion for Sanctions at ¶4;

(2)      The Annual Inspection Report which was required to be completed annually and to be preserved for one year, id. at ¶5;

(3)      The Maintenance Log which is a record of all maintenance work done on a

vehicle and which is required to be maintained for 18 months after the vehicle is sold, id. at ¶6;

(4)     The Accident Register which must be maintained for three years following an accident, id. at ¶7; and

(5)     The Safety Manager's Inspection Report which is prepared by the company's safety manager following an investigation conducted to determine whether an accident was preventable.  Id. at ¶8.

The plaintiff seeks various sanctions for spoliation of evidence including orders entering summary judgment on his claims against People's Choice for failure to maintain the van; precluding any defense "relying upon the absence of evidence that the [d]efendants failed to preserve"; precluding the defendants from "denying that there was a problem with the brakes"; prohibiting the defendants "from claiming that the brakes on the vehicle were repaired sufficiently prior to the collision"; precluding defendants' expert, Ted Bain, "from testifying about the brakes"; imposing an adverse inference instruction against the defendants at trial; and imposing monetary sanctions.  Id. at p.13; Plaintiff's Reply In Support of His Motion for Sanctions Due to Spoliation of Evidence [Doc. # 88, filed 2/26/2009] (the "Reply") at p.18.

People's Choice does not dispute the existence at one time of the Vehicle Inspection Report, Annual Inspection Report, Maintenance Log, or Accident Register.  It argues, however, that those documents were destroyed as a routine practice of the company or as a result of negligence.  Defendants' Response to Plaintiff's Motion for Sanctions Due to Spoliation of Evidence [Doc. # 83, filed 2/17/2009] (the "Response") at p.1.  People's Choice argues that it has produced an internal Incident-Accident Report [Doc. # 83-4] which it claims is the document the plaintiff identifies as the "Safety Manager's Inspection Report."  Response at pp.2-3.

Initially, the parties briefed the spoliation issue based on federal law. Subsequently, the plaintiff filed his Reply arguing that Colorado law should control the issue. Reply [Doc. # 88] at pp.7-11. The defendants filed a Sur-Reply stating, among other things, that "[d]efendants welcome the application of Colorado law." Sur-Reply [Doc. # 91-2] at p.5.

## II. LEGAL STANDARD

The legal standard under federal law for imposition of sanctions for spoliation of evidence was succinctly stated by this court in <u>Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.</u>, 244 F.R.D. 614 (D. Colo. 2007), as follows:

> The court has inherent power to impose sanctions for the destruction or loss of evidence. . . .
>
> In determining whether sanctions are appropriate, the court must first determine whether the missing documents or materials would be relevant to an issue at trial. If not, then the court's analysis stops there. If the missing documents would be relevant, the court must then decide whether [the custodian of the documents] was under an obligation to preserve the records at issue. Finally, if such a duty existed, the court must consider what sanction, if any, is appropriate giving the non-moving party's degree of culpability, the degree of any prejudice to the moving party, and the purpose to be served by exercising the court's power to sanction.

<u>Id</u>. at 620-21.

The standard under Colorado law is similar. In <u>Costillo v. Chief Alternative, LLC</u>, 140 P.3d 234 (Colo. App. 2006), the court held:

> Trial courts enjoy broad discretion to impose sanctions for spoliation of evidence. . . .
>
> Sanctions may be imposed both to punish a party who has spoiled evidence and to remediate the harm to the injured party from the absence of that evidence. . . .
>
> The trial court need not find that the evidence was destroyed in bad

faith: it may sanction a party who willfully destroys evidence relevant to a contested issue.

Id. at 236.

## III.  ANALYSIS

The Motion for Sanctions must be denied in its entirety under either federal or Colorado law.

### (A) Vehicle Inspection Report

The plaintiff argues that Mr. Pingel was required to complete a Vehicle Inspection Report ("VIR") and that the defendants had a duty to preserve the report:

> The company drivers were required to fill out the checklist of safety problems on a VIR for company vehicles and turn it into the mechanics on a daily basis.  The mechanics would then be responsible for making and documenting the necessary repairs prior to the vehicle leaving the premises.  Once the mechanics made the repairs listed on the VIR, they were required to store and maintain all VIRs for ninety (90) days pursuant to Federal Law. . . .  Mr. Walls testified he personally searched for the VIR and was unable to locate any documents.  He thought they were probably given to CTI [Casino Transportation] in September of 2005 when the company was sold but were most likely discarded in the trash.  Mr. Walls testified that nobody requested that he preserve the VIR or any records pertaining to the 1998 Ford van.

Motion for Sanctions at ¶4 (internal citations omitted).

Thomas Walls testified about the destruction of the Vehicle Inspection Report:

> Q:      Are there boxes that are located maintenance logs or VIRs?
>
> A:      Not VIRs, not anymore, not from People's. . . .  Because People's was gone September of '05.
>
> Q:      So as of September 2005, all of the VIRs and maintenance logs that People's Choice Transportation had, what happened to those?

7

A:      Trash.

Q:      Were they provided to you as part of the business and you discarded them, or were they discarded before you took over?

A:      I'm sure--to be truthful, you know, they were in there when we took over. I don't know when they threw them out at the time. They throw--usually you go through it once a month, you throw away the last month. So I couldn't tell you honestly.

I don't know exactly when they were thrown away. But like I said, every month you throw away the last month, three months ago. So you have three months of files, otherwise you'd have papers everywhere.

Deposition of Thomas Walls [Doc. # 83-3] ("Walls Depo.") at p. 45 line 5 through p. 46 line 4.

Before a sanction for spoliation of the VIR may be imposed, the plaintiff must establish that People's Choice was under an obligation to preserve it. Cache La Poudre, 244 F.R.D. at 621. Ordinarily:

[T]he duty to preserve evidence is triggered by the filing of a lawsuit. However, the obligation to preserve evidence may arise even earlier if a party has notice that future litigation is likely. The undeniable reality is that litigation is an ever-present possibility in our society. While a party should not be permitted to destroy potential evidence after receiving unequivocal notice of impending litigation, the duty to preserve relevant documents should require more than a mere possibility of litigation. Ultimately, the court's decision [on the duty to preserve] must be guided by the facts of each case.

Id. (internal citations and quotations omitted).

In the Cache La Poudre case, plaintiff's counsel sent a pre-suit demand letter to the defendant stating that the letter:

is to clearly put [Land O'Lakes] on notice of our client's trademark rights and clearly establish the opportunities we have given Land O'Lakes to avoid exposure. The second purpose of this letter is to determine whether this situation can be resolved without litigation

8

> and media exposure. . . . We think you will agree that the
> company's interests are best served by trying to resolve this
> unfortunate and difficult situation.

Id. at 622. The judge held, however, that this letter and others were insufficient to create a duty

on the part of Land O'Lakes to preserve evidence, finding:

> Rather than threatening impending litigation, [counsel's] letter
> implied that her client preferred and was willing to explore
> negotiated resolution.
>
>         \*    \*    \*
>
> This court recognizes that under different circumstances, a demand
> letter alone may be sufficient to trigger an obligation to preserve
> evidence and support a subsequent motion for spoliation sanctions.
> However, such a letter must be more explicit and less equivocal
> than Cache La Poudre's . . . correspondence with Land O'Lakes. . .
> . [P]rudent counsel would be wise to ensure that a demand letter
> sent to a putative party also addresses any contemporaneous
> preservation obligations.

Id. at 623.

      Similarly, in Costillo, the Colorado Court of Appeals held:

> Aloi [v. Union Pac. R.R., 129 P.3d 999 (Colo. 2006)], did not
> specifically address whether a trial court may sanction a party for
> precomplaint destruction fo evidence. However, the rule
> announced in Aloi--that a party may be sanctioned for destroying
> evidence after notice that it is relevant to litigation--would
> seemingly apply regardless of whether a complaint has been filed,
> so long as the party knew or should have known that the destroyed
> evidence was relevant to pending, imminent, or reasonably
> foreseeable litigation.
>
>         \*    \*    \*
>
> However, the behavior of the party moving form sanctions is an
> important factor for assessing whether sanctions are appropriate. . .
> .
>
> Here, the evidence showed that the manager of The Chief
> Alternative kept the entire apparatus, including the mirrored
> column and locknut, for approximately a year and a half following
> the incident. During this time plaintiff did not request to view or
> retain any of these items. The manager testified that

approximately one month after the incident, he called plaintiff to inquire about her well-being and that plaintiff's father said that "she was doing okay, that her bills were being paid, that she wasn't hurt that bad, and they weren't going to sue or anything." The manager also testified that in January 2003, he spoke with The Chief Alternative's insurance company and asked "if there was anything else that they needed from [him], and they said no, nothing had been filed, or they didn't need any other paperwork from [him]." He did not specifically ask whether the insurance company needed the mirrored column. The manager also testified that he discarded the evidence when he closed The Chief Alternative in June 2003.

According to plaintiff, her attorney sent a "demand package" to The Chief Alternative's insurance company in February 2003. However, a copy of this demand package was not included in the record. There is no indication in the record that plaintiff notified The Chief Alternative that she was planning to file a complaint or that it should preserve the mirrored column. Plaintiff did not inquire about the discarded evidence until after she filed this action in July 2003.

The trial court found that, while the parties may have known that a claim was "still out there" when the evidence was discarded, apparently no case had been filed, and this destruction was, at most, simple negligence. Based on this finding, the court denied plaintiff's motion for sanctions and her request for an instruction that the jury could presume by the destruction that the product was defective.

[W]e perceive no error in the trial court's determination. In contrast to <u>Aloi</u>, plaintiff did not provide The Chief Alternative with clear, prompt notice that a complaint would be filed.

140 P.3d at 236-37 (internal citations omitted).

In this case, the accident occurred on May 17, 2005. On June 1, 2005, plaintiff's counsel sent a letter to an independent adjustor for the defendants' insurance company which stated in its entirety:

Please be advised that this firm represents Michael Salvatore in regards to the motorcycle/automobile accident, which occurred on

> May 17, 2005. Please direct all written and oral communications
> to this office.
>
> Thank you for your time and attention to this matter. Should you
> have any questions, please do not hesitate to contact this office.

Response at Exh. G [Doc. # 83-8]. The letter did not contain any threat of litigation or indication that litigation was anticipated or imminent.

The adjustor conducted an investigation of the accident and on June 16, 2005, sent his First Report to the insurance company. Motion for Sanctions at Exh.2 [Doc. # 77-3] (the "First Report"). The First Report included the following:

> Pingle feels that soft brakes contributed to this loss. . . .
>
> Pingle has indicated that the brakes were soft, and a driver the day
> before, Jim Hickcox, commented about the "sponginess" and
> directed his comments to the maintenance crew. (The insured has
> indicated that that comment does exist)
>         *     *     *
> If inspections reveal faulty brakes the driver may not be held
> responsible.

Id. at p.3.

People's Choice was purchased by Casino Transportation on September 1, 2005. Walls Depo. [Doc. # 83-3] at p.6 lines 17-25.

Throughout 2006, adjustors for the defendants' insurance company corresponded repeatedly with plaintiff's counsel, but the evidence before me indicates that plaintiff's counsel did not respond. For example, on May 11, 2006, an adjustor wrote to plaintiff's counsel that "to properly evaluate your client's claim we will need to have copies of all medical bills. . . ." Response at Exh. J [Doc. # 83-11]. On June 1, 2006, the adjustor wrote again, stating that she had written to plaintiff's counsel "on several occasions and would appreciate some sort of

response from you." Id. at Exh. K [Doc. # 83-12].  In addition, the adjustor asked if there would

be "a claim for lost wages."  Id.  On August 2, 2006, an adjustor wrote:

> This letter is another request for information about Mr. Salvatore's injuries sustained in the above captioned accident.
>
> We would appreciate your cooperation in this matter, as you know, we cannot evaluate the injury claim without the medical reports, records and billings.
>
> Once again we would request your permission to obtain a recorded statement from your client as soon as possible.
>
> We would also like to know if Mr. Salvatore is still undergoing any treatment as a result of the accident?
>
> We hope to hear back from you.

Id. at Exh. L [Doc. # 83-13].

On November 22, 2006, an adjustor wrote to plaintiff's counsel:

> In reviewing the file, we note that . . . our adjustor[] had written to you on several occasions but never received a response.  Please advise me if you are still representing Mr. Salvatore.  If so [there is a request for information].
>
> If you are no longer representing Mr. Salvatore, please provide the courtesy of a response so that we can determine whether or not it is appropriate to contact him direct.

Id. at Exh. M [Doc. # 83-14].

On April 23, 2007, the adjustor made a Status Report to the defendants' insurance

company, which included the following:

> We have finally heard from the Law Firm representing Mr.
> Salvatore.  Ms. Holland Hoskins is the new attorney assigned to
> the case.  Apparently they have terminated the prior attorney as
> Ms. Hoskins informed me that they have received a number of
> calls from her clients who have been waiting for some time to get
> their cases resolved.  She is a bit overwhelmed with the case load
> but stated that she would get a Settlement Demand Packet out as
> soon as possible.

Id. at Exh. N [Doc. # 83-15].

On May 23, 2007, plaintiff's counsel made a settlement demand.  Id. at Exh. P [Doc. #

83-17].  The parties exchanged settlement offers from May 23, 2007, through November 1, 2007.

Id. at Exhs. Q [Doc. # 83-18]; R [Doc. # 83-19]; S [Doc. # 83-20]; T [Doc. # 83-21]; U [Doc. #

83-22]; and V [Doc. # 83-23].  The settlement demand from plaintiff's counsel dated

November 1, 2007, included the following:

> I have . . . attached a draft of a complaint that we will file in this
> case if this does in fact constitute your final offer.
>
> However, it is in the best interest of both parties to settle this case
> without commencing costly litigation.  My client is willing to
> greatly compromise his demand. . . .

Id. at Exh. V.  This is the first threat of litigation, albeit equivocal, in the record before me.

Based on the totality of the record before me, I find that the defendants knew or

reasonably should have known of the likelihood of litigation stemming from this accident on

November 1, 2007.  They had a duty to preserve evidence based on the possibility of litigation

on and after that date.  Cache La Poudre, 244 F.R.D. at 629 (noting that "[a] party must ensure

that relevant information is retained on a continuing basis once the preservation obligation

arises").

On November 21, 2007, the insurance adjustor informed plaintiff's counsel that she

would "forward the courtesy copy of your complaint to counsel." Response at Exh. W [Doc. # 83-24. Suit was filed on February 13, 2008. Complaint for Damages and Jury Demand [Doc. # 1, filed 2/13/2008].

The evidence establishes that a Vehicle Inspection Report concerning the van involved in the accident should have been prepared on May 17, 2005, and preserved for three month thereafter, through August 2005. The evidence further establishes that the Vehicle Incident Report was destroyed in the normal course of business and as a part of a document destruction practice at an unknown date after September 2005. The defendants had no duty to maintain it after August 2005, and there was nothing improper in the destruction of the Vehicle Inspection Report in September 2005 or shortly thereafter. The Vehicle Inspection Report was not improperly destroyed, and no sanction for its destruction is appropriate.

The plaintiff argues that defendants' post-suit assertion of work product immunity concerning the adjustor's file, including the First Report, establishes that defendants anticipated litigation as early as May 19, 2005. Reply [Doc. # 88] at p.15. I do not agree. The question is not the propriety of the defendants' assertion of the work product immunity, but when under the totality of the circumstances the defendants knew or reasonably should have known of the likelihood of litigation stemming from this accident. The evidence establishes that date at November 1, 2007.

### (B) Annual Inspection Report

The plaintiff argues that an Annual Inspection Report was required to be prepared and preserved, as follows:

> Mr. Walls testified that People's Choice Transportation was also
> required to have a mechanic conduct an annual inspection on each

14

company vehicle using an Annual Inspection Report.  The Annual
Inspection Report was required to be stored and maintained in the
company vehicle for one year until it is replaced by the subsequent
yearly inspection report.

Motion for Sanctions at ¶5.

Mr. Walls testified that the Annual Inspection Report for the van involved in the accident

was destroyed in the usual course of business within one year after it was prepared:

> Q:      What other logs are kept on company vehicles as to
> maintenance besides the VIR?
>
> A:      The only one that's kept in the vehicle besides the VIR is
> the annual inspection report, which is they do an annual inspection
> on each vehicle once a year.
>
> Q:      Who does the inspection?
>
> A:      The mechanic.
>
> Q:      Where are those kept?
>
> A:      They're kept in the bus.  If they're one year, they're thrown
> away, then put a new one in.  You do it every year.  It just rotates.
>
> \*      \*      \*
>
> Q:      And every year, they're discarded and the new one is
> placed in?
>
> A:      Correct.
>
> Q:      The old ones aren't stored?
>
> A:      No.

Walls Depo. [Doc. # 77-4] at p.36 line 18 through p.37 line 13.

First,  "[i]n determining whether sanctions are appropriate [based on a claim of

spoliation], the court must . . . determine whether the missing documents or materials would be

relevant to an issue at trial."  <u>Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.</u>, 244 F.R.D. at

621; accord <u>Henning v. Union Pacific R. Co.</u>, 530 F.3d 1206, 1220 (10th Cir. 2008)(stating that a spoliation sanction is proper only where a party has a duty to preserve the evidence and the adverse party was prejudiced by its destruction. "Without proving relevance, however, [the party seeking a sanction] could not show she was prejudiced," and no sanction is appropriate). Similarly, Colorado law requires that "the destroyed evidence was relevant to pending, imminent, or reasonably foreseeable litigation." <u>Costillo</u>, 140 P.3d at 236; accord <u>In re Holmes' Estate</u>, 56 P.2d 1333, 1335 (Colo. 1936)(holding that the "destruction of papers which might contain adverse evidence gives rise to a presumption unfavorable to the one responsible therefor").

A copy of the form used to prepare the Annual Inspection Report is attached as Exhibit 5 to the Motion for Sanctions. The form indicates that on a particular date a vehicle was inspected and its systems were either found to be "OK" or to "Need[] Repair." Motion for Sanctions at Exh. 5 [Doc. # 77-6]. If the system needs repair, the form contains a column for the "Repaired Date." <u>Id</u>. Unless the annual inspection was performed the day before the accident, the day of the accident, or the day after the accident, it would not provide any evidence relevant to the condition of the brakes at the time of the accident. There is no evidence, however, of the dates of the annual inspections for the van at issue. Except to argue generally that "[t]he Annual Inspection Report documented critical evidence to Plaintiff's claims and Defendants' defenses," Motion for Sanctions at ¶5, the plaintiff fails to address what he claims the Annual Inspection Report would have revealed about the state of the brakes at the time of the accident.

Nor is there any evidence concerning the destruction date of the 2005 and 2006 Annual Inspection Reports. The 2005 annual report apparently was destroyed in 2006, and prior to

November 1, 2007, the date on which the defendants had a duty to preserve documents.  On the evidence before me, I cannot say that the 2006 report was destroyed on or after November 1, 2007, and it seems likely that it was destroyed before that date.

I find that the Annual Inspection Reports were neither relevant to a matter at issue in this case nor were they destroyed at a time when People's Choice had a duty to preserve them in connection with this litigation.  No sanction for their destruction is appropriate.

### (C)  Maintenance Log

The plaintiff argues that a Vehicle Maintenance Log was required to be prepared and preserved, as follows:

> Mr. Walls testified that People's Choice Transportation was required to maintain a Maintenance Log on every company vehicle.  The Maintenance Log is a record of all the maintenance work ever done on a company vehicle since the vehicle was owned.  The Maintenance Log is required by law to be kept on every vehicle and maintained in the company's mechanic's office for 18 months after the vehicle is sold.

Motion for Sanctions at ¶6.

Section 396.3(b) and (c), 49 C.F.R, requires that a maintenance log be maintained by motor carriers for "a period of 1 year and 6 months after the motor vehicle leaves the motor carrier's control."  Any person who violates this requirement "may be subject to civil or criminal penalties."  49 C.F.R. § 390.37.

The defendants do not dispute that the van involved in this accident was sold in May 2007.  Sur-Reply at ¶9.  Pursuant to federal regulation, People's Choice was required to preserve the Maintenance Log until November 2008.  If the Maintenance Log existed on November 1, 2007, People's Choice was required to preserve it under its duty not to destroy evidence.  <u>See</u>

<u>Cache La Poudre</u>, 244 F.R.D. at 629 ("[a] party must ensure that relevant information is retained on a continuing basis once the preservation obligation arises").

The only evidence concerning the destruction of the Maintenance Log is the testimony of Mr. Walls that it was thrown away at an unknown time after Casino Transportation purchased People's Choice in September 2005. Walls Depo. [Doc. # 83-3] at p.45 line 5 through p.46 line 4. Mr. Walls also testified, however, that Casino Transportation was not aware of this accident until after the suit was filed in February 2008 and that no one asked Casino Transportation to preserve the Maintenance Log. Wall Depo. [Doc. # 91-3] at p.30 lines 13-18; [Doc. # 77-4] at p.48 line 25 through p.49 line 4.

Under federal law:

> [T]he general rule is that bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction. The adverse inference must be predicated on the bad faith of the party destroying the records. Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case.

<u>Aramburu v. The Boeing Co.</u>, 112 F.3d 1398, 1407 (10th Cir. 1997)(internal citations omitted). A sanction less severe than an adverse inference may be imposed, however, without a showing of bad faith. <u>103 Investors I, L.P. v. Square D Co.</u>, 470 F.3d 985, 989 (10th Cir. 2006)(holding that "[d]efendant was not required to show that plaintiff acted in bad faith in destroying evidence in order to prevail on its request for spoliation sanctions" less severe than an adverse inference instruction).

Under Colorado law, sanctions for spoliation of evidence may be imposed if a party "willfully destroys evidence relevant to a contested issue." <u>Castillo</u>, 140 P.3d at 236; <u>accord</u>

<u>Aloi</u>, 129 P.3d at 1003-04.

In addition, "[t]he burden is on the aggrieved party to establish a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to his cause." <u>Gates Rubber Co. v. Bando Chemical Industries, Ltd.</u>, 167 F.R.D. 90, 104 (D. Colo. 1996)(internal citation and quotation omitted). Here, the plaintiff has produced no evidence that the Maintenance Log would have supported his position that the brakes were not maintained. To the contrary, the only evidence concerning maintenance of the brakes on the dates in question is Mr. Pingel's testimony that "there was a box that said, 'above defects corrected,' and it was checked, and it had my supervisor's signature." Pingel Depo. [Doc. 77-9] at p.42 lines 1-3.

I find that People's Choice had a duty to preserve the van's Maintenance Log until November 2008, and that by November 1, 2007, it had a duty not to destroy the Maintenance Log in order to preserve evidence in this case. There is no evidence as to when the Maintenance Log was destroyed, and it is possible that it was thrown away in September 2005 when Casino Transportation purchased People's Choice. In any event, Casino Transportation did not know of the existence of this case until after suit was filed in February 2008. I find that the destruction of the Maintenance Log was the result of simple negligence and was at least in part attributable to the conduct of plaintiff's counsel. <u>See</u> pp.10-13, <u>supra</u>. As a result, I find that the negligent destruction of the Maintenance Log does not justify the imposition of any sanction based on spoliation of evidence. <u>See</u> <u>Gates Rubber</u>, 167 F.R.D. at 104 (stating that "[i]n order to determine the appropriateness of certain sanctions, whether dispositive or otherwise, judges need to balance the degree of misconduct evidenced by a party's mental state against the degree of

harm which flows from the misconduct").

Nor does the fact that People's Choice was required to maintain the Maintenance Log pursuant to federal regulation alter my decision. The negligent violation of a federal regulation "does not impose strict liability where a party has failed to maintain perfect record keeping." Alvariza v. Home Depot, 240 F.R.D. 586, 590 (D. Colo. 2007).

### (D) Accident Register

The plaintiff argues that People's Choice was required to maintain an Accident Register "for three years from the date of accident. . . ." Motion for Sanctions at ¶7. This requirement is contained in 49 C.F.R. § 390.15(b):

> For accidents that occur after April 29, 2003, motor carriers must maintain an accident register for three years after the date of each accident. . . . Information placed in the accident register must contain at least the following:
>
> (1) A list of accidents as defined at § 390.5 of this chapter containing for each accident:
>
> (i) Date of accident.
>
> (ii) City or town, or most near, where the accident occurred and the State where the accident occurred.
>
> (iii) Drivers Name.
>
> (iv) Number of injuries.
>
> (v) Number of fatalities.
>
> (vi) Whether hazardous materials, other than fuel spilled from fuel tanks of motor vehicle involved in the accident, were released.
>
> (2) Copies of all accident reports required by State or other governmental entities or insurers.

Pursuant to this regulation, People's Choice was required to maintain an Accident Register concerning this accident for three years, until May 17, 2008. It could not destroy the Accident Register at all after November 1, 2007, based upon its obligation to maintain evidence in this case.

The plaintiff has all of the information required to be maintained in the Accident Register, however. The date of the accident, its location, the driver's name, and any injuries sustained are not subject to dispute. The release of hazardous material is not relevant to the case. And the plaintiff has copies of all accident reports concerning the accident. Consequently, the plaintiff can show no prejudice as a result of the destruction of the Accident Register.

A sanction for spoliation is not appropriate where, as here, the destruction of evidence does not cause any prejudice. Henning, 530 F.3d at 1220; Costillo , 140 P.3d at 236.

### (E)  Safety Manager's Inspection Report

Finally, the plaintiff argues that Mr. Walls testified that internal company policy required the defendant's safety manager to investigate an accident to determine if it was preventable. This report, according to Mr. Walls, is stored in the driver's accident file. Motion for Sanctions at ¶8.

Mr. Walls testimony is not nearly as helpful as the plaintiff claims. To the contrary and as the defendants point out at page3 n.1 of their Response [Doc. # 83], Mr. Walls' discussion about the Safety Manager's Inspection Report concerned the internal policies of his employer, Casino Transportation, and "most companies, transportation companies." Walls Depo. [Doc. # 83-3] at p.56 line 6 through p.57 line 22. That testimony did not address the internal practices of People's Choice at the time of this accident. The defendants have produced a document titled

People's Choice Transportation Incident-Accident Report [Doc. # 83-6], however, which Mr. Pingel has identified as the report taken by People's Choice at the time of the accident. Pingel Depo. [Doc. # 83-5] at p.54 line 3 through p.58 line 25.

I find that the defendants have produced the report made by People's Choice at the time of the accident. The plaintiff's insistence that there is some other internal report of the accident is based on a misreading of Mr. Walls' testimony. The plaintiff has failed to show that a Safety Manager's Inspection Report (other than Doc. # 83-6) existed and was destroyed and, to the contrary, the defendants have shown that the report was produced. Consequently, no sanction is appropriate with respect to that document.

## IV. CONCLUSION

IT IS ORDERED that the Motion to Supplement [Doc. # 85], Motion to File Reply [Doc. # 89], and Motion to File Sur-Reply [Doc. # 91] are GRANTED.

IT IS FURTHER ORDERED that the Motion for Sanctions [Doc. # 77] is DENIED.

Dated April 6, 2009.

BY THE COURT:

 s/ Boyd N. Boland_____
United States Magistrate Judge